IN THE DISTRICT COURT OF THE VIRGIN ISLANDS
DIVISION OF ST. THOMAS AND ST. JOHN

| | |
|---|---|
| CERTAIN INTERESTED UNDERWRITERS ) <br> AT LLOYD'S, LONDON SUBSCRIBING ) <br> TO POLICY OF INSURANCE BEARING ) <br> CERTIFICATE NUMBER YHL1501007, ) <br> ) <br> Plaintiffs, ) <br> ) <br> v. ) <br> ) <br> SPLASH TIME, LLC, ) <br> a United States Virgin Islands ) <br> Limited Liability Company, ) <br> Defendant. ) <br> ) <br> _____ ) | Case No. <br><br><br><br> Action for Declaratory Relief <br> in Admiralty |

**COMPLAINT FOR DECLARATORY RELIEF**

COME NOW the Plaintiffs, CERTAIN INTERESTED UNDERWRITERS AT LLOYD'S, LONDON SUBSCRIBING TO POLICY OF INSURANCE BEARING CERTIFICATE NUMBER YHL1501007, by and through their undersigned counsel, and file this action seeking declaratory relief against sole named insured Defendant, SPLASH TIME, LLC, and, in support thereof, allege as follows:

**INTRODUCTION**

1. This action for declaratory relief arises out of a policy of marine insurance underwritten by Plaintiffs and issued to Defendant, SPLASH TIME, LLC.

2. The policy covers two vessels—the ISOLA and its dinghy. The ISOLA is a 39' Cruisers yacht. Its dinghy is an 8' Mercury inflatable with a 5 HP engine.

1

3. On November 15, 2015, Giorgio Bertrand—a co-owner of SPLASH TIME, LLC—was involved in an accident while operating a third vessel: a 13' Caribe with a 40 HP engine. Two individuals, including Mr. Bertrand, were killed. Three other individuals were reportedly injured.

4. Some time after the incident, SPLASH TIME, LLC, anticipating claims from those third parties injured and/or killed in the incident, made a demand to Plaintiffs for defense and indemnity under the subject policy.

5. The incident for which SPLASH TIME, LLC demands coverage did not involve either vessel insured under the policy. Rather, the vessel involved was a 13' Caribe DL 13 with a 40 HP Yamaha engine (the "Accident Vessel").

6. The Accident Vessel is not named, referenced, or otherwise insured under the subject policy and coverage therefor was never requested of Plaintiffs by SPLASH TIME, LLC, its insurance agent William Coates of Offshore Risk Management, or its London broker.

7. The Accident Vessel was not owned by or registered in the name of the named insured, SPLASH TIME, LLC, at the time of the accident.

8. Therefore, and because there is no other basis under the subject policy for coverage, Plaintiffs respectfully request that this Court enter judgment in favor of Plaintiffs, finding that there is no coverage under the subject policy for the November 15, 2015 incident.

## PARTIES, JURISDICTION, AND VENUE

9. This Court has subject-matter jurisdiction over this matter pursuant to the Federal Declaratory Judgment Act, 28 U.S.C. § 2201 (2012), for the purpose of determining the question and actual present controversy existing between the parties.

10. This Court has subject-matter jurisdiction over this matter under the Admiralty and Maritime Jurisdiction of the United States District Courts. 28 U.S.C. § 1333 (2012). Specifically, this action concerns a policy of marine insurance, which is a maritime contract. Any legal disputes concerning this marine insurance policy, including this action, are subject to this Court's admiralty and maritime jurisdiction.

11. This is an action for declaratory relief within the admiralty and maritime jurisdiction of the United States District Courts and is brought as an admiralty and maritime claim within the meaning of Rule 9(h) of the Federal Rules of Civil Procedure and Supplemental Rules governing admiralty and maritime claims.

12. SPLASH TIME, LLC is a limited liability company existing under the laws of the United States Virgin Islands and having its principal place of business in St. Thomas, United States Virgin Islands.

13. Upon information and belief, until Giorgio Bertrand's death, he and his wife Lisa Bertrand resided in St. Thomas, United States Virgin Islands, and were the sole co-managers of SPLASH TIME, LLC. Currently, Ms. Bertrand is the sole proprietor of SPLASH TIME, LLC.

14. On or about March 26, 2015, Plaintiffs issued to SPLASH TIME, LLC a policy of marine insurance ("the Policy"), Policy Number YHL1501007, attached hereto as ***Exhibit A***, covering the insured vessel ISOLA during the policy period from 12:01 AM on March 25, 2015 to 12:01 AM on March 25, 2016. In addition to the ISOLA, the policy also insured the ISOLA's tender, represented to Plaintiffs at the time of placement to be an 8' inflatable Mercury with a 5 HP engine.

15. The Policy is underwritten by Plaintiffs, three syndicates at Lloyd's of London, in accordance with the following proportions: Antares Syndicate 1274 – 33.34%; Skuld Syndicate 1897 – 33.33%; and Brit Syndicate 2987 – 33.33%.

16. Venue is proper in that the Policy, which is the subject matter of this declaratory action, contains the following venue provision: "It is also hereby agreed that any dispute arising hereunder shall be subject to the exclusive jurisdiction of the Federal courts of the United States of America." Therefore, the Parties to this action have consented to this venue.

17. Venue is further proper because the Named Insured, SPLASH TIME, LLC, is a Virgin Islands corporation and its co-managers, Giorgio and Lisa Bertrand, were, at all times material, residents of the Virgin Islands.

18. Venue is further proper because the accident for which a claim is being made under the Policy occurred in the waters of St. Thomas, United States Virgin Islands and involved a watercraft owned and registered in the United States Virgin Islands.

19. This Court has personal jurisdiction over SPLASH TIME, LLC because that entity has systematic, substantial, and continuing contacts within this District. Specifically, SPLASH TIME, LLC is incorporated in the United States Virgin Islands and owns the vessel ISOLA, which is registered and moored permanently in the Virgin Islands.

## GENERAL ALLEGATIONS

### A. The Underlying Incident

20. Plaintiffs re-allege and re-assert the allegations in paragraphs 1 through 19 above, as though fully set forth herein.

21. SPLASH TIME, LLC's demand for coverage arises out of an incident that occurred during the operation of a vessel that was not owned by the Named Insured and was not, at all times material, insured under the Policy.

22. Specifically, on November 15, 2015, Giorgio Bertrand was operating the Accident Vessel with four passengers in addition to himself.

23. The passengers were Serge and Dawn Fauvet, Lydia Luton, and Leo Barbel.

24. Upon information and belief, Mr. Bertrand was ferrying these passengers from his restaurant on Water Island to an unknown location.

25. At approximately 7:00 PM on November 15, 2015, Mr. Bertrand's vessel allided with a fixed and illuminated cement mooring dolphin.

26. The allision occurred off the coast of Water Island, St. Thomas, in the United States Virgin Islands.

27. As a result of the allision, Mr. Bertrand and passenger Lydia Luton were killed. Passengers Serge Fauvet, Dawn Fauvet, and Leo Barbel reportedly suffered personal injuries.

28. At the time of the incident, Mr. Bertrand was neither operating the ISOLA nor the declared and insured Mercury inflatable dinghy, both of which are owned by the insured entity, SPLASH TIME, LLC. Rather, he was operating the undeclared and uninsured Accident Vessel, which he owned personally and which was not insured under the Policy nor submitted as a risk to be insured at any time prior to inception of coverage nor at any time up to and beyond the date of the accident.

29. That is, SPLASH TIME, LLC did not own the Accident Vessel on the date of the incident. Rather, the Accident Vessel was owned by and registered to Mr. Bertrand,

5

individually, with registration number VI 3726-TC. *See* Accident Vessel Registration, attached hereto as ***Exhibit B***.

30. On or about November 23, 2015, SPLASH TIME, LLC submitted to Plaintiffs a Notice of Loss for the subject accident.

31. On December 10, 2015, Plaintiffs received a letter of representation from an attorney representing SPLASH TIME, LLC, requesting that Plaintiffs defend and indemnify SPLASH TIME, LLC for any third party claims that may arise from the subject accident.

32. On or about December 15, 2015, Plaintiffs received a letter of representation from an attorney representing of the Estate of Lydia Luton and passengers Dawn and Serge Fauvet, requesting certain insurance information.

33. Following certain investigation, Plaintiffs concluded that there was no coverage for this loss. Concurrently with the filing of this Complaint, therefore, Plaintiffs issued a Declination of Coverage letter to the named insured, SPLASH TIME, LLC, through counsel for SPLASH TIME, LLC. A copy of the Declination Letter is attached hereto as ***Exhibit C***.

34. Accordingly, there is a case of actual controversy between Plaintiffs and SPLASH TIME, LLC requiring action by the Court for resolution. Plaintiffs seek a determination and declaration by the Court that there is no coverage under the Policy for the November 15, 2015 loss claimed by SPLASH TIME, LLC.

### B. The Policy: Application Process and Placement

35. On or about March 3, 2015, Giorgio Bertrand, on behalf of SPLASH TIME, LLC, completed an electronic Online Application for insurance with its agent, Offshore Risk Management. *See* Online Application, attached hereto as ***Exhibit D***.

36. SPLASH TIME, LLC's Online Application requested a quote to insure a 2000 39' Cruiser named ISOLA, bearing hull number CRSUSZ051900. SPLASH TIME, LLC is listed on the Online Application as the owner of the ISOLA.

37. The Online Application disclosed a single tender/dinghy to ISOLA—an 8' inflatable Mercury valued at $1,500.00.

38. On the Online Application, SPLASH TIME, LLC declined a separate policy providing tender/dinghy coverage. No coverage for any other vessel or any other entity or individual was requested in the Online Application or in connection with SPLASH TIME, LLC's request for insurance to Plaintiff underwriters.

39. On March 3, 2015, agent Offshore Risk Management submitted to Aqua Underwriting a request for an insurance quotation on behalf of SPLASH TIME, LLC.

40. On March 5, 2015, Aqua Underwriting provided agent Offshore Risk Management with a proposal to insure ISOLA and its disclosed dinghy, subject to a vessel survey, vessel photographs, hurricane plan, and a signed and handwritten insurance application.

41. In response to these subjectivities, on March 25, 2015, Giorgio Bertrand, on behalf of SPLASH TIME, LLC, completed and signed a Handwritten Application. *See* Handwritten Application, attached hereto as ***Exhibit E***, at 4.

42. In the signed Handwritten Application, SPLASH TIME, LLC again disclosed that the sole tender/dinghy to the ISOLA was a 2010 8' inflatable Mercury with a 5 HP engine, valued at $1,500.00. There was no hull-identification or registration number provided for the dinghy. *See* Handwritten Application, Ex. E, at 2.

43. In deciding whether to provide the requested coverage, and in setting the appropriate premium and terms therefor, Plaintiffs relied upon the information provided, and the

7

representations made, by SPLASH TIME, LLC in the Online Application and the signed Handwritten Application for insurance.

44. In reliance upon the application information and representations, Aqua Underwriting bound coverage for ISOLA and its inflatable Mercury dinghy, effective at 12:01 AM on March 25, 2015.

45. The Policy was thereafter delivered to SPLASH TIME, LLC via its agent Offshore Risk Management on March 26, 2015. *See* Policy, Ex. A, at 1. The terms and conditions of the insurance agreement were accepted without comment, objection, or request for any addition or amendment to the terms and conditions thereof by SPLASH TIME, LLC, its insurance agent, or any other person acting on its behalf in connection with the placement of the Policy.

46. Under the terms of insurance agreed to and accepted by the Parties, SPLASH TIME, LLC was named as the sole listed Named Insured.

47. The Parties agreed that the Policy would insure the ISOLA for an agreed value of $145,000.00.

48. The Parties further agreed the Policy would insure only one tender/dinghy, the inflatable Mercury dinghy and its 5 HP tiller-controlled outboard motor, for an agreed value of $1,500.00.

49. No request was made by either of the Parties for a change in the terms of coverage, except that on March 27, 2015, SPLASH TIME, LLC requested that the Policy be endorsed to add as additional insureds the following resorts: Marriot Frenchman's Reef Resort and Bolongo Bay Beach Resort.

50. On March 30, 2015, the Policy was so endorsed, adding these entities as additional insureds. From the inception of the Policy through the date of the subject accident, no other request was made by SPLASH TIME, LLC or its agents for any alteration of the terms and conditions of insurance.

51. From March 30, 2015 through the present, there have been no other requests from SPLASH TIME, LLC or its agents to amend or supplement coverage with respect to any additional vessels and/or any additional insureds under the Policy in any fashion.

52. The Policy thus provides coverage solely for the two disclosed vessels: the 39' ISOLA and its 8' inflatable Mercury dinghy.

### C. The Policy: Limits and Scope of Coverage

53. This action implicates the protection-and-indemnity portion of the Policy, which, subject to the Policy's terms and conditions, responds to third-party claims of damage or personal injury.

54. But while this action, narrowly, focuses on the protection-and-indemnity portion of the Policy, as explained below, there is no coverage for the loss under any section of the Policy.

55. The signed Handwritten Application completed by SPLASH TIME, LLC dictates that "This application will be incorporated in its entirety into any relevant policy of insurance where insurers have relied upon the information contained herein." *See* Handwritten Application, Ex. E, at 4.

56. Section A of the subject Policy provides, in pertinent part, as follows:

**Section "A" – HULL MACHINERY**

Upon the Hull, Spars, Sails, Fittings, Gear and Equipment, Apparel, Provisions, Stores, Machinery, Boats and other Furniture and Furnishings of and in the yacht

9

> hereby insured, subject to all of the terms and conditions (including the Running Down Clause) of this Policy.
>
> The foregoing does not include fishing tackle, moorings or personal property.

*See* Policy, Ex. A, at 13.

57. As will be explained below in the context of protection-and-indemnity coverage under Section B, there can be no hull-and-machinery, or first-party property, coverage under this section because the loss did not involve "the yacht insured" or its "[b]oat[]," *i.e.*, its dinghy.

58. Section B of the Policy provides, in pertinent part, as follows:

> **Section "B" – PROTECTION AND INDEMNITY INSURANCE**
>
> If the Insured shall by reason of his interest in the insured yacht become liable to pay and shall pay and shall pay any sum or sums in respect of any responsibility, claim, demand, damages, and/or expense or shall become liable for any other loss arising from or occasioned by any of the following matters or things during the currency of this Policy in respect of the yacht hereby insured, that is to say:-
> . . .
>
> **Bodily Injury** (II) Loss of life, illness, or bodily injury and payments made on account of life salvage;
>
> The Insurers will pay the Insured such sum or sums so paid or which may be required to indemnify the Insured for such loss; PROVIDED always that the liability of these Insurers is limited to the sum stated under Limit of Protection and Indemnity Insurance, and subject to the same limit for each person. [I]t being understood that this limit applies to any one accident or series of accidents arising out of the same event.
> . . .
>
> **AGGREGATE LIMIT**
>
> The total amount recoverable under the Protection and Indemnity Insurance coverage of this Policy, for all losses, including property damage, personal injury, loss of life, payments made on account of life salvage, and costs, resulting from any accident or series of accidents arising out of the same event, shall not exceed, in the aggregate, the sum stated under Limit of Protection and Indemnity Insurance.

*See* Policy, Ex. A, at 15-16.

59. Elsewhere, the Policy provides as follows:

**MISREPRESENTATION OR FRAUD**

This entire Policy shall be void if the Insured or their representative has concealed or misrepresented any material fact or circumstance concerning this insurance or the subject thereof, or the interest of the Insured therein, or in case of fraud or false swearing by the Insured touching any matter relating to this insurance or the subject thereof whether before or after a loss.

*See* Policy, Ex. A, at 11.

60. Section C of the Policy provides, in pertinent part, as follows:

**Section "C" – OMNIBUS CLAUSE**

It is understood and agreed that the word "Insured" whenever used in the Running Down Clause in Section "A" – Hull Insurance, of this policy, and whenever used in Section "B" – Protection and Indemnity Insurance of this Policy, includes in addition to the Named Insured any person . . . who may be operating the vessel with the prior permission of the Named Insured . . . .

*See* Policy, Ex. A, at 16.

61. Here, the Omnibus Clause cannot provide coverage for the subject incident for at least two reasons. First, for coverage under the clause to attach, the operator in question must be using the vessel "with the prior permission of the Named Insured." Here, the Named Insured, SPLASH TIME, LLC, did not own the vessel involved in the accident, and so it could not have given Mr. Bertrand "permission" to operate that vessel, as is required by the Omnibus Clause. Second, and more fundamentally, although there is language respecting permissive users, coverage under the clause is tied to the operation of "the vessel," *i.e.*, the *insured vessel*. So unless the putative permissive user is operating the insured vessel itself, there is no triggering of the Omnibus Clause and no coverage thereunder. Simply stated, if the Policy does not insure the relevant vessel, the Omnibus Clause cannot extend coverage to the owner or operator thereof.

62. Section D of the subject Policy provides, in pertinent part, as follows:

**Section "D" – MEDICAL PAYMENTS INSURANCE**

The Insurers agree to pay to or for each person who sustains bodily injury caused by accident occurring during the Policy period, while in or upon, boarding or leaving the yacht insured hereunder, the reasonable expense of necessary medical, surgical, ambulance, hospital and professional nursing services and, in the event of death resulting from such injury, the reasonable funeral expense, all incurred within one (1) year from the date of accident, subject to [certain terms and conditions].

*See* Policy, Ex. A, at 17.

63. As explained above with regard to the lack of first-party property coverage under Section A, there can be no coverage under Section D for the same reason that protection-and-indemnity coverage fails under Section B. Coverage for medical expenses under Section D attaches only where the underlying incident involved "the yacht insured hereunder." This issue is explored in more detail below, but the term "the yacht insured hereunder" refers only to the ISOLA and its declared Mercury tender. There can be no coverage under Section D for incidents involving the undeclared Accident Vessel.

64. The Policy's declarations page reflects the following:

**AGREED VALUES / SUM(S) INSURED / LIMIT(S) AND DEDUCTIBLES:**
. . .

| SECTIONS COVERED | AGREED VALUES / SUM(S) INSURED / LIMIT(S) | DEDUCTIBLE(S) |
|---|---|---|
| **HULL & MACHINERY (AGREED VALUE)** | USD 145,000 | USD 2,900 EACH ACCIDENT EACH OCCURRENCE EXCEPT LOSS OR DAMAGE INCLUDING TOTAL LOSS RESULTING FROM NAMED OR NUMBERED WINDSTORM WHEN DEDUCTIBLE USD 7,250 |
| . . . | | |

| **TENDER/DINGHY** . . . | USD 1,500 | USD 500 EACH ACCIDENT EACH OCCURRENCE |
| **PROTECTION & INDEMNITY** . . . | USD 5,000,000 | USD 500 EACH ACCIDENT EACH OCCURRENCE |

*See* Policy, Ex. A, at 3.

65.     As shown by the above excerpts from the Policy, the Policy provided $145,000.00 worth of hull-and-machinery, or first-party property, coverage for the ISOLA. That is, if the ISOLA itself were damaged, it was insured up to $145,000.00 for such property damage.

66.     The Policy also provided $1,500.00 worth of property coverage for the 8' Mercury tender and its 5 HP outboard motor, and imposed a $500.00 deductible for claims on the tender: amounts commensurate with the tender's value and the risks that it posed.

67.     While the Policy provided $145,000.00 in property coverage for the ISOLA, and $1,500.00 in property coverage for the 8' Mercury tender, the Policy provided—for both vessels—$5,000,000.00 of third-party protection-and-indemnity coverage. That is, if either the ISOLA or its Mercury tender were involved in an accident that damaged another vessel, or injured a third-party individual, the Policy would provide up to $5,000,000.00 devoted to the defense and indemnification of the named insured, SPLASH TIME, LLC, against such potential third-party claims.

68.     The $5,000,000.00 in protection-and-indemnity coverage under the Policy applies only to incidents involving the vessels covered under the Policy—the coverage attaches only "to the insured yacht" itself. *See* Policy, Ex. A, at 15 ("If the Insured shall *by reason of his interest in the insured yacht* become liable," then, subject to other terms and conditions, protection-and-indemnity coverage shall attach) (emphasis added).

13

69. Under every section of the Policy, "the insured yacht," and similar language, includes only those vessels disclosed by SPLASH TIME, LLC during the application process: the ISOLA and its 8' Mercury tender, the values of which are reflected on the declarations page.

70. Protection-and-indemnity coverage extends only to SPLASH TIME, LLC, as the Named Insured, and its members and managers, and only for operation of either ISOLA or the 8' inflatable Mercury dinghy.

71. As noted above, the analysis is exactly the same and coverage similarly fails under each of the following sections of the Policy: Section A – Hull & Machinery; Section C – Omnibus Clause; and Section D – Medical Payments Insurance. Because these three sections all reference and provide coverage only for, albeit using slightly different language, incidents involving "the insured yacht," they cannot respond to the incident here, which in no way involved either the ISOLA or its Mercury dinghy.

72. The Policy does not—under Section A, B, C, or D—extend coverage to any other vessel other than those specifically disclosed during the application process and specified in the Policy.

73. The Policy does not—under Section A, B, C, or D—extend coverage to any other insureds other than the Named Insured and the Additional Insureds named via endorsement.

74. The Policy does not—under Section A, B, C, or D—extend coverage to the Named Insured, SPLASH TIME, LLC, or its members/managers while operating any other vessel or watercraft other than the insured ISOLA and its 8' inflatable Mercury dinghy.

75. The Policy does not—under Section A, B, C, or D—extend coverage for any other permissive users or operators, omnibus insureds, or additional insureds.

76. The Policy does not—under Section A, B, C, or D—extend coverage for undisclosed after-acquired, replacement, or substitute tenders/dinghies after the commencement of the Policy, either on a temporary or permanent basis.

77. The Online Application and the Handwritten Application, which were both required to be completed, specifically and purposely solicit information about the tender(s) that will be insured, because such information is material to the risk insured, both as that risk relates to the primary vessel and to the tender itself. Thus, by specifically inquiring into details about tenders, Plaintiffs made clear that the specifications of such tenders are material to Plaintiffs' underwriting decisions.

78. Because a new tender poses new risks that must be evaluated with specificity, coverage for a new tender cannot, under the Policy, passively arise simply by virtue of SPLASH TIME, LLC's acquisition or use of another vessel as a new tender or for any other purpose.

79. Thus, where, as here, the risks posed by the two tenders are entirely and materially different, it follows *a fortiori* that there can be no coverage for a tender about which Plaintiffs were never informed and which Plaintiffs were never given an opportunity to inquire into.

80. The following distinctions between the Accident Vessel and the declared 8' Mercury tender emphasize the importance of protecting Plaintiffs against SPLASH TIME, LLC's attempt to unilaterally create coverage for the Accident Vessel merely by acquiring and using same.

    a. The Accident Vessel is equipped with a forty-horsepower engine: eight times more horsepower than the engine on the declared Mercury tender, which had a five-horsepower engine.

15

    b. The Accident Vessel is a rigid-bottomed vessel, while the declared Mercury tender was an inflatable dinghy. Rigid-bottomed vessels generate significantly less friction than inflatable dinghies when travelling on water, and as such are generally capable of reaching significantly higher speeds.

    c. The Accident Vessel has center-console steering, while the Mercury tender has outboard, tiller steering.

    d. The Accident Vessel has a passenger capacity of six, while the declared Mercury tender only has a passenger capacity of three.

    e. Without its motor, the Accident Vessel weighed 424 pounds; without its motor, the declared Mercury tender weighed seventy-nine pounds.

    f. The Accident Vessel had a maximum payload of 1,823 pounds; the declared Mercury tender had a maximum payload of 750 pounds.

    g. The Accident Vessel, with its motor, has an approximate replacement value of $17,500.00, while the declared Mercury tender has an approximate replacement value of $3,600.00.

    h. The length of the declared Mercury tender made it possible to stow same aboard the ISOLA's swim platform, while the length of the Accident Vessel rendered it incapable of being stowed aboard the ISOLA.

81. The Accident Vessel posed a significantly greater underwriting risk than the declared Mercury tender, thereby exemplifying why the vessel information disclosed in the Applications is relied upon in determining whether to underwrite the risk and on what terms.

## COUNT I – THE LOSS IS NOT COVERED BECAUSE (1) IT INVOLVES A VESSEL NOT INSURED UNDER THE POLICY AND NOT OWNED BY THE SOLE NAMED INSURED, AND (2) BECAUSE COVERAGE FOR AN OPERATOR ARISES ONLY DURING OPERATION OF AN INSURED VESSEL

82. Plaintiffs re-allege and re-assert the allegations set forth in paragraphs 1 through 81 above as if set forth fully herein.

83. Under the General Maritime Law, as under insurance law generally, the information provided by the insured during the application process defines the scope of the risk underwritten.

84. The Handwritten Application completed by SPLASH TIME, LLC was incorporated into and made a part of the subject Policy.

85. SPLASH TIME, LLC never disclosed during the application process, or anytime thereafter, the existence of, or the fact that coverage was sought for, the 13' Caribe Accident Vessel.

86. Thus, Plaintiffs were never given an opportunity to evaluate the underwriting risks posed by the Accident Vessel and they cannot be held to have intended to cover the Accident Vessel without such an opportunity.

87. Therefore, there is no coverage under the Policy for the underlying incident because the only vessel involved—the Accident Vessel—is not insured thereunder.

88. Further, the Accident Vessel was not owned by the named insured, SPLASH TIME, LLC.

89. There is no provision of the Policy that would permit SPLASH TIME, LLC to simply substitute the Accident Vessel for the declared Mercury tender.

90. There is no provision of the Policy that would cover Mr. Bertrand while operating vessels not specifically covered by the Policy.

WHEREFORE, Plaintiffs respectfully request that this Honorable Court to adjudge and declare the following:

a. Coverage under the subject Policy is limited to operation of ISOLA or its inflatable Mercury dinghy;

b. Coverage does not extend to SPLASH TIME, LLC, or its managers or members, except in relation to the entity's use of ISOLA and the declared Mercury dinghy;

c. Coverage does not extend to Giorgio Bertrand (as operator at the time of the incident) except when he is operating ISOLA or the declared Mercury tender;

d. The Policy does not provide coverage for temporary or permanent after-acquired or replacement vessels;

e. SPLASH TIME, LLC never obtained coverage for the Accident Vessel and same was not covered by the Policy;

f. Because the vessel on which the incident occurred was not covered under the Policy, there is no coverage for the loss under any section of the Policy;

g. Grant any other relief this Honorable Court may deem just and proper.

Dated this 19th day of February 2016.

Respectfully submitted,

**LAW OFFICES OF DUENSING & CASNER**

By: /s/ Mathew J. Duensing
Matthew J. Duensing, Esq., V.I. Bar No. 64
Law Offices of Duensing & Casner
P.O. Box 6785
St. Thomas, VI  00804
340/774-6011 (Phone)
340/776-8520 (Fax)
Email: mduensing@vilawyers.com